IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| DEBRA J. BRYANT, | ) | Civil No. 06-755-JO |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | <u>OPINION AND ORDER</u> |
| | ) | |
| COMMISSIONER, SOCIAL SECURITY ADMINISTRATION, | ) ) | |
| | ) | |
| Defendant. | ) | |

    Richard A. Sly
    1001 S.W. Fifth Avenue, Suite 310
    Portland, OR 97204

    Linda S. Ziskin
    3 Monroe Parkway, Suite P
    Lake Oswego, OR 97035

     Attorneys for Plaintiff

    Jeffrey H. Baird
    Special Assistant United States Attorney
    Michael McGaughran
    SOCIAL SECURITY ADMINISTRATION
    701 Fifth Avenue
    Suite 2900, M/S 901
    Seattle, WA 98104

Neil J. Evans
UNITED STATES ATTORNEY'S OFFICE
1000 S.W. Third Avenue, Suite 600
Portland, OR 97204-2902

    Attorneys for Defendant

JONES, Judge:

Claimant Debra J. Bryant seeks judicial review of a final decision of the Commissioner of Social Security denying her application for Supplemental Security Income ("SSI") payments under Title XVI of the Social Security Act ("SSA"). This court has jurisdiction to review the Commissioner's decision pursuant to 42 U.S.C. § 405(g). For the reasons set forth below, this court reverses and remands for further proceedings under sentence four of 42 U.S.C. § 405(g).

## ADMINISTRATIVE HISTORY

Claimant first applied for SSI on January 23, 2002, alleging disability due to fibromyalgia causing vertigo, migraines, chronic fatigue, and mental illness. Tr. 90, 107.[1] On June 7, 2002, the claim was denied and claimant did not appeal. Tr. 57, 33. Claimant reapplied for SSI on July 30, 2003, alleging disability since September 1, 2000,[2] due to fibromyalgia and vertigo causing migraines, physical pain, stiffness, fatigue, comprehension problems, sleep apnea, and depression. Tr. 93, 156, 183-86, 188, 200. Claimant's application was denied initially and on reconsideration. At a hearing before an Administrative Law Judge ("ALJ") on

---

[1] Citations are to the page(s) indicated in the official transcript of record filed by the Commissioner on September 19, 2006.

[2] Although this is the date listed on the "Application for Supplemental Security Income," in the accompanying "Disability Report Adult," claimant lists May 16, 2001 as the date when she became unable to work. Tr. 93, 156. A similar discrepancy exists in her January 23, 2002 "Application for Supplemental Security Income," which lists September 1, 2000, as the date the disability began, but June 1, 2001, as the date when she became unable to work. Tr. 90, 107. These discrepancies are not material to the present decision.

2 - OPINION AND ORDER

July 26, 2005, claimant, represented by counsel, appeared and testified, as did her son, Travis Neith, and a vocational expert ("VE"). Tr. 30. The ALJ issued a decision denying benefits on November 21, 2005. Tr. 19. The ALJ's decision became the final decision of the Commissioner on May 11, 2006, when the Appeals Council declined review. Tr. 8.

## STANDARD OF REVIEW

This court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995). The Commissioner's decision must be upheld, even if the evidence is susceptible to more than one rational interpretation. Id. at 1039-40.

## SUMMARY OF THE ALJ's FINDINGS

The ALJ, as required, employed a five-step "sequential evaluation" process in evaluating claimant's disability. See 20 C.F.R. § 416.920(a). Claimant challenges the ALJ's findings at steps two, three and five.

At step one, the Commissioner determines whether the claimant is engaged in substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(I). In the present case, the ALJ found that claimant had not engaged in any substantial gainful activity since her alleged onset date of disability. Tr. 26. This finding is not in dispute.

At step two, the Commissioner determines whether the claimant has a medically severe impairment or combination of impairments. 20 C.F.R. § 416.920(a)(4)(ii). A claimant has a

3 - OPINION AND ORDER

severe impairment for the purposes of step two if the impairment significantly limits the ability to perform basic work activities. 20 C.F.R. § 416.920(c). These include physical functions such as seeing, hearing, speaking, walking, standing and sitting, and mental functions such as understanding, remembering, using judgment and responding appropriately to work situations. 20 C.F.R. § 416.921(b).

In the present case, the ALJ found claimant's major depressive disorder to be a "severe" impairment and discounted her other alleged disabilities. Tr. 20-22, 26. In so doing, the ALJ found that treating physician Dr. Richard Wernick's December 2001 fibromyalgia diagnosis was incomplete because it "did not include a control point examination." Tr. 21. Instead, the ALJ adopted examining physician Dr. Maureen Filipek's May 2002 evaluation, which was negative for fibromyalgia. Id. The ALJ found that claimant's complaints of vertigo and headaches were not substantiated by objective medical evidence and therefore did not qualify as impairments. Tr. 21-22. Finally, the ALJ determined that claimant's sleep apnea was not a severe impairment. Tr. 22. These findings are in dispute.

At step three, the Commissioner determines whether the claimant's impairment "meets or equals" one of the impairments listed in the SSA regulations. 20 C.F.R. § 416.920(a)(4)(iii); 20 C.F.R. Pt. 404, Subpt. P, App. 1 ("Listing"). If so, the claimant is disabled. 20 C.F.R. § 416.920(a)(4)(iii). If the claimant has more than one impairment, the Commissioner must determine whether the combination of impairments is medically equal to any Listing. 20 C.F.R. § 416.926(a); Lewis v. Apfel, 236 F.3d 503, 514 (9th Cir. 2001). A finding of equivalence must be based on medical evidence only. 20 C.F.R. § 416.929(d)(3); Lewis, 236 F.3d at 514. In the present case, the ALJ found claimant's depression did "not meet or medically equal one of the

listed impairments in Appendix 1, Subpart P, Regulation No. 4."  Tr. 26.  This finding is in dispute.

In the next step, the Commissioner must assess the claimant's residual functional capacity ("RFC"), which is an assessment of the sustained work-related activities the claimant can still do on a regular and continuing basis despite the limitations imposed by the impairments.  20 C.F.R. §§ 416.920(e), 416.945; see also Social Security Ruling 96-8p.  The ALJ assessed claimant to have a RFC "for simple, routine repetitive work with occasional public interaction . . . [with] no exertional limitations."  Tr. 26.  In making this determination, the ALJ found that the claimant's allegations regarding her limitations and the allegations of her son and daughter were not entirely credible.  Tr. 23, 24, 26.  These findings are in dispute.

At step four, the Commissioner considers whether claimant retains the RFC to perform work she has done in the past.  20 C.F.R. § 416.920(a)(4)(iv).  If she cannot perform the work she has done in the past, the Commissioner proceeds to step five.  20 C.F.R. § 416.920(g).  The ALJ found that claimant was unable to perform her past relevant work.  Tr. 26.  This finding is not in dispute.

At step five, the Commissioner determines whether the claimant can perform other work.  20 C.F.R. § 416.920 (a)(4)(v).  The Commissioner may meet this burden with the testimony of a VE or by reference to the Medical-Vocational Guidelines.  20 C.F.R. § 416.966; 20 C.F.R. Pt. 404, Subpt. P, App. 2.  If the Commissioner meets this burden, then the claimant is not disabled.  20 C.F.R. § 416.920(g).

In his step five evaluation, the ALJ found that claimant retains the RFC to perform other work in the national economy.  Tr. 26-27.  Relying on testimony from an impartial VE, the ALJ

5 - OPINION AND ORDER

found a person of claimant's age ("younger individual"), education (high school), past work experience (skilled), and RFC could "work as a small products assembler, electronics worker, and packing line worker." Tr. 27.  Accordingly, the ALJ found that claimant was not "disabled" within the meaning of the SSA and denied her application for benefits.  Tr. 27.  This finding is in dispute.

## STATEMENT OF FACTS

The parties are familiar with the medical and other evidence of record. I will not, therefore, repeat the evidence except as necessary to explain my decision.

## DISCUSSION

Claimant challenges the ALJ's evaluation of steps two, three, and five.  She contends that the ALJ:  (1) erroneously concluded that only her major depressive disorder met the requirement of severity and not her alleged fibromyalgia, vertigo, headaches and sleep apnea; (2) failed to consider her impairments in combination; (3) failed to properly consider medical evidence; (4) improperly discredited her testimony; and (5) failed to include all of the limitations in the vocational hypothetical question, rendering the hypothetical invalid.  For the reasons explained below, I agree with claimant to the extent that, based on my review of the record, I conclude that the ALJ failed to properly evaluate the medical evidence, an error that affects the ALJ's findings at steps two through five.

### I. The ALJ's Evaluation of Medical Evidence at Steps Two and Three

Claimant contends that the ALJ erred in his RFC finding by improperly rejecting medical evidence and claimant's testimony.  RFC is a determination of what the claimant can do despite the claimed limitations.  20 C.F.R. § 416.945(a).  RFC is "the maximum degree to which the

individual retains the capacity for sustained performance of the physical-mental requirements of jobs." 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(c).  When determining the RFC, the ALJ must assess all evidence including claimant's and lay witness' testimony and medical reports.  20 C.F.R. § 416.945(a))(3).  The claimant's ability to work on a sustained basis must be evaluated when determining whether she meets a disability criteria.  20 C.F.R. § 416.912(a).  As explained below, I agree with claimant's contention that the ALJ improperly rejected medical evidence, resulting in an improper RFC determination.

The opinion of a physician is not necessarily conclusive as to the physical condition or ultimate disability.  Thomas v. Barnhart, 278 F.3d 947, 956 (9th Cir. 2002).  Rather, the ALJ must determine the credibility of the claims and resolve any conflicts and ambiguities in the medical evidence.  Id.  Generally, greater weight is afforded "to a treating physician's opinion because 'he is employed to cure and has greater opportunity to know and observe the patient as an individual.'"  Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989) (quoting Sprague v. Bowen, 812 F.2d 1226, 1230 (9th Cir. 1987)).  A treating physician's opinion is controlling when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" of record.  20 C.F.R. § 416.927(d)(2).  A treating physician's opinion that conflicts with that of an examining physician may be rejected "if the ALJ makes 'findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record.'"  Thomas, 278 F.3d at 957 (quoting Magallanes, 881 F.2d at 751).

   A. <u>Fibromyalgia</u>

  Claimant argues that the ALJ erroneously rejected Dr. Wernick's diagnosis of fibromyalgia.  On November 8, 2001, claimant was examined and treated by Dr. Wernick, a rheumatologist, who found "16/18 tender points associated with fibromyalgia."  Tr. 248.  Dr. Wernick wrote "her diffuse pain, tender points and associated sleep disturbance are all consistent with the diagnosis of fibromyalgia per the American College of Rheumatology."  <u>Id</u>.  The ALJ rejected this testimony in favor of a forty minute exam by Dr. Filipek, an examining physician, who evaluated claimant on May 11, 2002.  Tr. 21, 274.  Dr. Filipek reported that her examination of claimant was negative for fibromyalgia.  Tr. 279.  The ALJ found that Dr. Wernick "did not include a control point examination . . . The examination of Dr. Filipek is [therefore] more thorough and resulted in a conclusion that the claimant did not meet the criteria for fibromyalgia."  Tr. 21.

  The ALJ's rationale for rejecting Dr. Wernick's diagnosis of fibromyalgia is insufficient.  This court has recognized that "control points are *not* included in the diagnostic criteria for fibromyalgia."  <u>Swayze v. Barnhart</u>, Civil No. 02-396-ST, Findings and Recommendation at 17 (D. Or. Oct. 17, 2002) (emphasis in original) (citing American College of Rheumatology, <u>1990 Criteria for the Classification of Fibromyalgia</u>, <u>available at</u>  http://www.rheumatology.org/ publications/classification/fibromyalgia/1990_Criteria_for_Classification_Fibro.asp), <u>adopted</u> (Order, Nov. 25, 2002 (Panner, J.)); <u>see also</u> Roscoe N. Gray, M.D. & Louise J. Gordy, M.D., <u>Attorneys' Textbook of Medicine</u> § 25.34 (3d ed. 2007) [hereinafter Gray & Gordy].  Relying on the diagnostic criteria from The American College of Rheumatology, the court in <u>Swayze</u> found that a diagnosis of fibromyalgia requires only a positive history of widespread pain and 11/18

8 - OPINION AND ORDER

tender points. Swayze, Civil No. 02-396-ST at 18. Although Swayze is not controlling, I find that the ALJ erred in rejecting Dr. Wenick's diagnosis because it did not include a control point examination.

In addition, Dr. Wernick is a rheumatologist; rheumatology is considered the specialty for fibromyalgia. Benecke v. Barnhart, 379 F.3d 587, 594 n.4 (9th Cir. 2004). Opinions by specialists relating to the area of specialization are given more weight than those of nonspecialists. 20 C.F.R. § 416.927(d)(5). The ALJ did not adequately explain why he afforded the opinion of Dr. Filipek greater weight than the treating specialist, Dr. Wernick.

Further, the diagnosis of fibromyalgia is consistent with other evidence in the record. Fibromyalgia is a disease "diagnosed entirely on the basis of patients' reports of pain and other symptoms." Benecke, 379 F.3d at 590. Symptoms "include chronic pain throughout the body, multiple tender points, fatigue, stiffness, and a pattern of sleep disturbance that can exacerbate the cycle of pain and fatigue associated with the disease." Id. The present record is consistent with these symptoms. When claimant first presented with complaints, Dr. Rodgers, her primary physician, made referrals to a neurologist and then to a rheumatologist to determine the cause. Tr. 454, 440. Claimant tested negative for arthritis, multiple sclerosis, and lupus. Tr. 248, 303, 325. Once Dr. Wernick made the diagnosis of fibromyalgia, her primary physician's office integrated the diagnosis into her medical history and treated the symptoms. See, e.g., Tr. 248, 521.

In a letter dated May 4, 2005, Dr. Andrew Mendenhall, from her treating physician's office, confirmed that claimant had a diagnosis of fibromyalgia for the past four years and that her November 2004 motor vehicle accident worsened her symptoms. Tr. 340. The diagnosis of

9 - OPINION AND ORDER

fibromyalgia, associated symptoms, and treatment is well-documented throughout the record by her treating physician's office records. See, e.g., Tr. 450, 442, 521, 353, 356. Discounting a treating physician's opinion because it agreed with the findings of another doctor, rather than upon independent conclusion, is not a legitimate basis to reject the opinion; "[i]f anything, the similarity of their conclusions provides reason to credit the opinions of both." Lester v. Chater, 81 F.3d 821, 832 (9th Cir. 1995).

On October 24, 2002, Dr. Kevin Jamison examined claimant for complaints of migraines and vertigo and found her complaints "likely related to underlying depression, exogenous stressors, and fibromyalgia." Tr. 305. On November 4, 2003, Diana S. Mock, D.O., performed minor outpatient surgery on claimant. Tr. 358. Although the procedure was completed without complication, claimant developed significant complications during recovery. Id. Dr. Mock stated that she "can only attribute [the complications] to her fibromyalgia." Id. On March 16, 2005, Dr. Ronald C. Fraback treated claimant upon referral by Dr. Rodgers for an evaluation of possible lupus. Tr. 36, 325, 343. Dr. Fraback indicated that although claimant was negative for a collagen vascular disease such as lupus, "her history and examination are most consistent with fibromyalgia." Tr. 325. Further, he discussed and gave claimant literature to read on fibromyalgia and prescribed 40 Ultram tablets for her pain. Id.

Because his conclusion is not supported by substantial evidence in the record taken as a whole, the ALJ erred by discounting the opinions of other treating and examining physicians who confirmed Dr. Wernick's opinion that claimant's symptoms are consistent with the diagnosis of fibromyalgia.

B.   Mental Disorders

The ALJ dismissed an April 17, 2001, diagnosis by Dr. Lange, an examining neuropsychologist, in favor of the more recent April 29, 2002 diagnosis by examining psychologist Dr. Warford. Tr. 21. Claimant contends this was error. If an examining physician's opinion is uncontradicted, the Commissioner must provide "'clear and convincing'" reasons for rejecting it. Lester, 81 F.3d at 830 (quoting Pitzer v. Sullivan, 908 F.2d 502, 506 (9th Cir. 1990)).

Dr. Lange diagnosed claimant with: (1) Somatization Disorder; (2) Major Depressive Disorder, recurrent, moderate with anxious features; (3) Cognitive Disorder for attention, concentration and mental control; (4) Polysubstance Dependence in full remission; and (5) Histrionic and Narcissistic Personality Traits and Obsessive-Compulsive features. Tr. 230-31. Dr. Warford also diagnosed claimant with major depressive disorder. Tr. 271. However, in her report Dr. Warford explains that she "assessed [claimant] specifically for depression." Tr. 271. Thus, Dr. Warford's conclusions do not rule out any other diagnoses, nor did she test for them. Tr. 271. Therefore, the reports of Dr. Lange and Dr. Warford do not conflict.

The ALJ accepted the more recent diagnosis of "only" major depressive disorder, stating that claimant was neither treated for the conditions diagnosed by Dr. Lange nor diagnosed with them by a treating physician and, therefore, when combined with the more recent diagnosis, there is "no evidence of a medically determinable severe somatization disorder, cognitive disorder, or personality disorder." Tr. 21.

Whether the claimant has sought treatment or been referred for psychotherapy is not dispositive because "the fact that claimant may be one of millions of people who did not seek

11 - OPINION AND ORDER

treatment for a mental disorder until late in the day is not a substantial basis on which to conclude that . . . [an] assessment of claimant's condition is inaccurate." Nguyen v. Chater, 100 F.3d 1462, 1465 (9th Cir. 1996). Further, one of the characteristics of somatization disorder is for patients to "present to general medical settings rather than mental health settings." Gray & Gordy, § 178.30. Somatization is a disorder in which perceived physical problems are of psychological origin. Benecke, 379 F.3d at 592. Somatization often requires medical treatment as well as psychological treatment. Gray & Gordy, § 178.30.

Claimant has presented to multiple general medical settings with physical complaints that are consistent with the diagnosis of somatization. There is no affirmative evidence in the record that contradicts Dr. Lange's diagnosis. Therefore, the ALJ erred in rejecting the examining physician's uncontradicted opinion on his own theory that claimant was not treated for the condition nor specifically diagnosed by a treating source, because that rationale does not meet the "clear and convincing" standard.

### C.     Headaches and Vertigo

Claimant contends that the ALJ erred when he did not find her alleged headaches and vertigo to be "severe" impairments. In rejecting the claimed impairments, the ALJ summarizes the entire record of Dr. Jamison, a treating neurologist, in one sentence: "[Dr. Jaimson] indicated that he could not support the claimant's complaints of disability based on objective measures." Tr. 24.

Claimant was originally referred to Dr. Jaimson on February 27, 2001, by her primary physician for headaches "almost daily over the last couple of months." Tr. 454. In a letter dated March 19, 2001, Dr. Jamison relayed to her primary physician that, although her neurological

12 - OPINION AND ORDER

exam was normal, he switched her depression medication from Zoloft to Effexor, added Naprelan for pain, Elavil for depression, and Amerge together with Imitrex for her migraines. Tr. 264.  A month later, on April 18, 2001, claimant reported to Dr. Jamison that although the Effexor was working "fairly well," she was still having daily headaches.  Tr. 262.  She also said that she was having poor sleep at night, fatigue, and body pains.  Id.  In his assessment, Dr. Jamison wrote: "Chronic pain syndrome including headaches, diffuse body pain, possibly fibromyalgia," and gave her samples of Zomig XMT, and a prescription for trazodone.  Id.  Dr. Jamison continued to see claimant; in an October 24, 2002, assessment he wrote: "Unusual recurrent frequent and brief vertigo, apparently a pervasive problem for at least a year and a half and likely related to underlying depression, exogenous stressors, and fibromyalia."  Tr. 305.  On June 10, 2003, Dr. Jamison reported that "there really has been no change," ordered an MRI to rule out multiple sclerosis and prescribed Neurontin for her complaints of "vertigo."  Tr. 303. On June 10, 2003, Dr. Jamison's assessment stated: "Fibromyalgia, a number of symptomatic complaints."  Tr. 302.  In this same report, Dr. Jamison noted in the "Plan" section of his visit form, that he cannot support her complaints of disability with objective measures.  Tr. 302. However, "migraine headaches cannot be evidenced by imaging studies, laboratory tests or other ordinary 'objective' evidence"; rather, migraines are "readily diagnosed through the evaluation of symptoms."  Dalley v. Commissioner, No. C 00-01687 VRW, 2006 WL 2578269, at *6-7 (N.D. Cal. Sept. 6, 2006) (unpublished).  Dr. Jamison prescribed medication for migraines and "vertigo," suggesting that his evaluation of claimant's symptoms met these diagnoses.  Tr. 262-64, 303.

13 - OPINION AND ORDER

Given the treatment record, the nature of migraines, and no affirmative evidence of malingering in the record, I find the ALJ's rationale for rejecting Dr. Jamison's treatment record does not meet the "clear and convincing" standard.

II. The ALJ's Credibility Determinations and Rejection of Testimonial Evidence

The ALJ makes credibility determinations and "[i]f the ALJ's credibility finding is supported by substantial evidence in the record, [the court] may not engage in second-guessing." Thomas, 278 F.3d at 959. Because this case must be remanded for further proceedings, I do not reach claimant's credibility arguments. The ALJ will necessarily reassess credibility in light of this opinion and order. I note, however, that the ALJ disregarded Patrick Earl's lay witness testimony without comment. Failure to take lay witness testimony into account, or expressly determine to disregard the testimony and give reasons that are "'germane to each witness,'" is legal error requiring remand. See Nguyen, 100 F.3d at 1467 (quoting Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir. 1993)).

III. The ALJ's Step Five Determination

Because the RFC was improperly developed at step three, and the case must be remanded for further proceedings, I do not reach the specific errors alleged by claimant with respect to step five of the sequential evaluation. However, the same errors in interpreting the medical evidence, discussed above in Part I, would impact the analysis at step five. Therefore, step five will necessarily be reevaluated after the correct RFC determination is made.

IV. Scope of the Remand

It is within the discretion of the court whether to remand for further proceedings or to award benefits. See Winanas v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987). "In cases where the

testimony of the vocational expert has failed to address a claimant's limitations as established by improperly discredited evidence, we consistently have remanded for further proceedings rather than payment of benefits." Harman v. Apfel, 211 F.3d 1172, 1180 (9th Cir. 2000). A case should be remanded for an award of benefits when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are not outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

Smolen v. Chater, 80 F.3d 1273, 1292 (9th Cir. 1996).

In the present case, a remand for an award of benefits is inappropriate because outstanding issues remain with regard to claimant's RFC. With the RFC as presented, the VE testified that if claimant has two unscheduled, un-excused absences per month, it would preclude substantial gainful employment. Tr. 50. Claimant's RFC must be reassessed because it remains to be determined whether claimant's absences necessarily would fall into this category. Unlike in Benecke, 379 F.3d at 591, none of claimant's treating physicians filled out questionnaires assessing her limitations. Although Dr. Lange opined that she would have trouble working full time, he was not clear whether this analysis was conclusive or would require additional evaluation. Tr. 232-33. Similarly, although Dr. Warford diagnosed a major depressive disorder, she did not indicate what limitations this would place on claimant. Tr. 266. Finally, claimant's treating physician's office has not filed any reports indicating the specific limitations that result from her alleged impairments.

When enhancement of the record would be useful, the court should remand for further proceedings. Benecke, 379 F.3d at 593. Thus, I conclude that a remand for further proceedings is appropriate because outstanding issues remain to be resolved and it is not clear from the record

15 - OPINION AND ORDER

that the ALJ would be required to find the claimant disabled. Therefore, in the exercise of my discretion, I remand this action to the Commissioner for further proceedings. See 42 U.S.C. § 405(g) (sentence four).

## CONCLUSION

For the foregoing reasons, and based on my review of the record, the Commissioner's decision denying claimant SSI disability benefits under Title XVI of the SSA is REVERSED and this matter is REMANDED to the Commissioner for further proceedings consistent with this opinion under sentence four of 42 U.S.C. § 405(g).

DATED this 30th day of July, 2007.

/s/ Robert E. Jones
ROBERT E. JONES
U.S. District Judge